for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you very much. Please be seated. Good morning to everyone. We are ready to hear arguments this morning in the case of the U.S. v. Winston. Mr. Suarez. Good morning, Your Honors, and may it please the Court, Christopher Suarez representing the appellant in this case, Mr. Bruce Winston. The 404B evidence from North Carolina should have been excluded in this case for two reasons. First, Mr. Winston was not an actor. He was not present or involved with any aspect of the North Carolina incident. And two, the North Carolina incident was not sufficiently similar to the charged conduct in time, place, manner, or modus operandi. Well, you don't think he doesn't have to be present on the 404B, does he? He doesn't have to be present per se, but the evidence... I don't know what per se means, but he doesn't have to be physically present, correct? He has to be knowing... No, I'm asking you, he doesn't have to be physically present, does he? He has to be knowingly involved in the accident. That's not my question to you. You said he wasn't present. I said, does he have to be physically present? Not necessarily, but he was not involved in the incident, and that's what's key here. When you say he wasn't... What exactly does that mean? He wasn't personally involved, but a vehicle... Talk to me about his relationship, his ownership interest in the vehicle. So he had title to the vehicle and title to the horse trailer. Right, and so that is... It is not... He is not involved in the sense that he's not driving the car, but if someone is driving my car as a getaway vehicle, for example, would it be accurate to say that there's no involvement on my part? For purposes of the Huddleston test, so the Huddleston test requires that the jury be able to conclude that the defendant committed the act and was the actor. We pointed in our brief to the Eastern District of Virginia Judge Ellis' opinion in the Young case, which had a very similar fact pattern to here. But it's not precedential, is it? It's not really... That isn't really something we could hang our hats on, in other words. Well, it's something that the reason... You can hang your hats on the reasoning because the facts are so on point. If we're so inclined. If you're so inclined. And in that case, the situation was such that there had been a prior fire, there had been ownership of the vehicle on the part of the defendant. A district court decision isn't the strongest thing to be arguing to us, I don't think. I agree with that in general, Your Honor, but in a case that's so highly probative factually, where the point here... You like the analysis. The analysis is excellent. The analysis is perfectly on point because it has a prior act involving a fire, possession, and the charge conduct also involved a fire. And the government tried to impute the mens rea of the prior act to the fire, and Judge Ellis said, A, that was thin stuff, the mere possession, that it wasn't a sufficient link for Huddleston as far as the actor was concerned. Would that be reversible had he decided otherwise on an abuse of discretion? Would that have been reversible? It would not have been reversible. And he actually ruled in the alternative in that case, that under 403 balancing, that the evidence still would have confused the issue because it made someone think, it would make the jury think that that person had committed the arson, and it would confuse the issues for the jury, just as the admission of the North Carolina evidence here confused the issues for the jury with regard to making the jury assume that Mr. Winston necessarily was involved in traps. Wasn't there a limiting instruction given here? There was a limiting instruction here, Your Honor, but that is not sufficient to cure the error here. Excuse me, don't we assume that juries are capable of, we assume that they are able to act on the basis of a limiting instruction, don't we? So why is it not sufficient here? It's not sufficient here because, first of all, there was not sufficient gatekeeping power that was implemented by the judge here. Well, right now I'm focusing on the limit, the curative instruction. Yes. The curative instruction was not sufficient because this was the type of evidence that inflamed the passions of the jury. It was confusing. You're going to have to sort of focus, why was the curative instruction, what was the limitation with the curative instruction? I understand that you're saying that it was inflammatory. I get that, but all I'm saying is usually we assume, even with inflammatory evidence, that a jury is capable of following the instructions of the district court judge to disregard that which is inflammatory. So I'm asking, what's the deficiency in the curative instruction here? Well, the deficiency in the curative instruction was that it did not disentangle the prejudicial effect of this evidence. In fact, what the government stated here was that the verdict proved, if anything, that the instruction was followed here. And so what ultimately happened was the jury followed the instruction as to Mr. Winston and convicted him on virtually identical evidence. Now, to Judge Shedd's point regarding the prior cases in this circuit, we want to point out that the government points to no prior case in the precedential history of the Fourth Circuit where 404B evidence was admitted with such an attenuated connection to the actor. Indeed, they cited 25 404B cases in their brief. It had been done by district judges in this circuit. I can guarantee you that because I've done it on facts like this. I mean, not exactly like this, but 404 is a rule of inclusion. And then especially when you have a limiting instruction, we base our jurisprudence on the fact that juries follow instructions. And they can decide. You may have a plausible reason for why he wasn't involved in that prior act, but the jury could draw emphasis to say that he was. Well, Your Honor, let's focus in on this court's precedent specifically. There are 12 cases that the government cited. There's no precedent that absolutely determines how we rule in this case, is there? There is precedent in our view determines how we rule in this case. First of all, the first is the fact that there's no precedent in the circuit that has held that evidence like this is admissible with such an attenuated connection to the actor. He was not in North Carolina when the incident occurred. He had no control of the horse trailer and truck when it was seized. There was no evidence that Mr. Winston saw the marijuana. That's what you say, but didn't he own the trailer? He did not own the trailer, Your Honor. The undisputed evidence in this case was that he had sold the trailer in 2008 to one of his Mexican employees. Was the title in his name? The title was in his name. Well, couldn't the jury believe that the title in his name still gave him control? You could argue against that all you wanted to, but why couldn't somebody believe if it's still titled somebody could believe that the sale was just the front? I'm not saying that it was or wasn't. The jury's allowed to make those kind of determinations in every case. I understand your argument. You have an argument that they should not have thought he was involved in that, but that's not the test. We submit that it's not sufficient and that the reasoning of Judge Ellis applies perfectly here, and this is a gatekeeping power the judge needs to have. What do you think the prior act is? What's the prior act? How do you define the prior act here? Well, our submission is that there wasn't really a prior act. The only information that Mr. Winston. Well, there was a prior act. You just say it wasn't his prior act. He received, I mean, at most he received after-the-fact knowledge. No, no, that's not what I'm asking you. I'm just trying to understand your application of 404B. What is the prior act that we should be looking at? The arrest? The prior act is whether that Mr. Winston was knowingly involved in a North Carolina incident, and none of the evidence suggests that. And what is the act? Transportation of drugs? Transportation of marijuana in a secret compartment. That is the prior act, and there's not any evidence that links him to that as a prior act. We've already been through this, I think, two or three different times. He owned title to the vehicle, to the trailer. Right, and per the analysis in Judge Ellis' opinion, which I understand is only a district court opinion, our view is that that's sufficient. But even if you hold that Mr. Winston. That's insufficient? We hold that the evidence is insufficient, yes. Now, as to even if you were to hold that he was an actor under Huddleston, this court's precedents also dictate that the similarities weren't sufficient here. Let's go over that aspect of the case here. What precedent? So we pointed you to the McBride, Johnson, and Hernandez cases. The McBride and Johnson cases are particularly on point for this. Here you had a situation where the- With respect to what specifically? With respect to the sufficient similarity prongs. So there's two prongs that have to be met here. First is the defendant has to be the actor under Huddleston, and the second is there needs to be sufficient similarity between the prior act and the charged conduct. Here you had- Stop for one second. If we see, if I were to say that the prior act is the transportation of drugs in this manner, okay, so take that as the prior act, not the actual arrest, not the actual charge, but the act of transporting drugs. Now, talk about that act. Why is there not-why is he not involved? Why could the jury not find that he was involved in that for purposes of saying it wasn't a mistake? It was a vehicle he had title to. It was a hidden compartment for transporting drugs interstate. Well, again, there was no evidence linking it to-linking Mr. Winston to this case. He had sold the trailer- I just did. I said he had title. I know he said he sold it, but he still had title. Title is an indication of ownership, isn't it, in every state? Isn't that true? Title can be an indication of ownership. Can be. So the jury could accept that as an indication of ownership. Well, Your Honor, not necessarily. Again, the analysis of Judge Ellis- No, but no, I don't care about his analysis now, and I think you had it right. I don't-you don't really want to stand there and say title to a vehicle cannot be an indication of ownership. It can be. And that's why we have- Since it can be, the jury could easily find that as they walk through that prior act. Correct. Correct? In some cases, yes, but again, Judge, we believe that- I'm talking in the facts of this case. Is there anything in this case to say that the jury absolutely, as a matter of law, could not find that Mr. Winston had some ownership interest in the trailer that was being used to transport drugs? We submit yes based on the prior sale, but clearly we're in disagreement on that. I want to just go ahead to the McBride-Johnson analysis because that is the second prong here that matters. The prior conduct here, it occurred at a different time period three years earlier. It involved different vehicles, a horse trailer towing a truck with different drivers, Vanover and Flores, rather than Winston and Payne. It involved the transports of completely different narcotics, marijuana rather than cocaine, in entirely different compartments, a large partition behind a wall as opposed to a small recess below a truck bed. And the quantities were massively different, $1.1 million in money to $30,000 versus half a ton and 21 kilograms in the other. And they were in an entirely different part of the country. And again, he wasn't the prior actor. We dispute Your Honor's contention there, but as to the differences, those differences that I just articulated were at least as great as the differences that were the case in McBride and Johnson. And again, I pointed to the government's 25 cases. In the 12 drug cases they cited, all of those, the defendant was unambiguously the actor meeting the first prong, but the question is whether the second prong is met. And the reason why the court has solicitude for those differences is because this court does not want to put defendants on trial for prior acts that are not probative and are disconnected from the prior act. And here the differences between the charge conduct and 404B evidence were actually greater than those in Johnson and McBride, or at least equal to them. We talk about those in detail in our opening brief at pages 29 to 31, but to be brief, in both Johnson and McBride the defendants were in the thick of the action as opposed to this case. In McBride, McBride had actually sold and dealt in crack cocaine. In Johnson, Johnson had actually been involved in past cocaine transactions. In McBride it involved a shorter time difference, one and a half years, as opposed to the three years here. It involved less of a difference in drugs, crack cocaine. But you're talking about differences in degree in different parts of the country. You're not talking about Maryland and California. You're talking about two areas within the circuit in what is interstate transportation. So I'm not, you're talking, my point simply is it's not entirely, it's not a stretch to say that you're articulating differences of degree rather than kind. But the point is there is a panoply of differences here. There's differences in almost every respect. Yes, and that would be unless you have the prior act being a part of the existing conspiracy, that's going to happen. That's why we're looking at it under 404B. Because there are going to be differences in time, there are going to be differences, some differences in geography. It does seem to me at least noteworthy that you have the similar phenomenon of the hidden compartment within a vehicle, both vehicles being vehicles in which the defendant has an ownership interest. So to your similar phenomenon point, Your Honor, we simply submit there that this really isn't a hallmark of one unique drug organization. And the reality is there wasn't a linkage between the two. One involved Fanover and Floridiflores. The other one involved Winston Payne and Aravia. And that's really how I understand it's in your best interest to characterize it. But as we keep pointing out, there are some common threads there. Well, the point, Your Honor, is that transporting drugs and traps is a hallmark of every drug organization in the world. That's information that I can obtain from watching Dateline NBC, Law & Order, or reading an Elmore Leonard paperback. And so that evidence that they adduced here was cumulative to the common sense information that everyone knows. The only information Mr. Winston gleaned in this case was the information that the- Didn't the government also have a theory of, I don't want to be sensitive about this, but willful blindness in this case on the part of your client? Willful blindness. That was part of- His not knowing what happened in the incident case. Your time is running out. I'll just answer that briefly. Sure. A, he was disconnected. Our position is that he's disconnected from the act. I got you. And B, there wasn't a sufficient similarity connecting the acts. So there's no way that you can impute his intent between the two. Do you like Sean Redd? Yes, I will- No, just wait one second. Judge Keenan, do you have a question here? We took up most of this time. Do you have any question at this point? He's going to be back up, but I want to give you the opportunity. Thank you, Judge Shedd. No, I do not. All right. Thank you very much. And you've saved some time. Thank you. Thank you. Mr. Martinez. Thank you, Your Honor. And may it please the Court, Peter Martinez on behalf of the United States. Your Honors, the evidence regarding the North Carolina seizure in this case tended to show that Bruce Winston was not an unwitting courier of drugs or a blind mule, as his counsel repeatedly told the jury at trial. To the contrary, the evidence showed that Mr. Winston knew of the secret compartment in his truck and of the drugs and the money inside that compartment in this case. I'm sorry. Are we talking now about Maryland or North Carolina?  And what evidence? With regard to the issues that were before the jury in this case. And what evidence are you relying on with respect to the state of Mr. Winston's knowledge involving the North Carolina incident? We think there are a constellation of factors that the Court can rely on to find that Mr. Winston was an actor and sufficiently linked to the events in North Carolina. Well, what are they? They are that he held title to and was owner of the trailer in which the drugs and money were being transported. His employees from his farm were towing that trailer using his wife's truck. And after the drugs and money were seized in North Carolina, Mr. Winston went to North Carolina, claimed his wife's truck, discussed the circumstances of the seizure with law enforcement, and attempted to distance himself from the contents of the trailer, just as he attempted to distance himself from the contents of his truck in this case. Excuse me. Mr. Martinez, I have a question about this. I think that what we need to focus on is what was Mr. Winston's act? 404B requires evidence of another act. And what did this defendant do in 2010? Well, Your Honor, I just attempted to articulate that he owned the truck, the trailer rather, that was transported. Well, owning a truck isn't an evidence of a bad act. So you're saying the fact that he owned a truck that was later used in a crime is sufficient for 404B purposes? No, Your Honor, that's not the government's position here. The government's position is that when you take together the fact that Mr. Winston owned the trailer, that he employed the individuals who were driving the truck that was towing that trailer, and then he went to North Carolina  and thereby gained knowledge that a vehicle belonging to him had been used to transport drugs and money in a secret compartment, all of those things are a constellation of acts that connect Mr. Winston to that seizure in North Carolina. Well, you know, it seems, Mr. Martinez, and I apologize for the, I don't mean to interrupt you, but it is just a little bit awkward with the video. The thing that troubles me about this case, and perhaps you could help me, is the fact that in almost every other case involving 404B, it's undisputed that the prior act was committed by the defendant. And it seems to me here that your logic is a little bit circular, that what you're doing is you're trying to use evidence from 2013 to prove that, in fact, he committed an act in 2010. And doesn't the fact that we don't have indisputable evidence that he committed an act in 2010 render this case different from the other cases you're relying on? Well, Your Honor, I guess I would have two responses. First, we don't need indisputable evidence for purposes of the relevance analysis under Rule 404B. Well, you need some evidence that he committed a wrongful act, don't you? That's correct, Your Honor. And we believe that all of the factors that I just articulated, taken together, do bring this within the ambit of an act. And one reason we know that, Your Honor, is this Court's holding in United States v. Roll. In that case, the defendant's primary act for purposes of the government's intrinsic case was that he owned trailers that were used to transport marijuana and that he employed family members who actually transported the drugs. And so it's our position, Your Honor, that if that universe of conduct is sufficient to constitute an act for purposes of the government's intrinsic case, which must be made clear. Okay, but Roll, there was direct evidence. In Roll, the co-defendant or his former accomplice testified. So it wasn't just simply the circumstantial evidence of the ownership. It was the fact that his accomplice specifically implicated him, wasn't it? That's correct, Your Honor. And a big prong of the accomplice's testimony was the 404B. So it's not really directly analogous because you had the accomplice's testimony, which you don't have from 2010. Well, there are certainly differences, Your Honor, and one difference was the 404B prong of the accomplice's testimony. But the general point is that if the defendant's conduct in Roll was sufficient to constitute an act for purposes of an intrinsic case, which must be proven beyond a reasonable doubt, then it's our position that it should also constitute an act for purposes of an extrinsic case, which is subject to a lower evidentiary threshold under Rule 404B. Mr. Martinez, what was the nature of the district court's instruction with respect to this evidence? Your Honor, the district court's instruction is found at page 1411 of the joint appendix. Can you summarize it for me? Yes, Your Honor. There were two, I think, essential prongs of the limiting instruction that the district court gave the jury. The first was that the jury was not to consider the evidence regarding the North Carolina seizure as evidence that Mr. Winston had a criminal character or propensity to commit crimes. It was not a substitute for guilt. And he explicitly instructed the jury that they could not consider the evidence against the co-defendant, Mr. Payne. Those were the key prongs, I believe, of the district court's limiting instruction. But with regard to that limiting instruction, Mr. Martinez, the court didn't really tell the jury for what purpose. It just said for a more limited purpose it may be considered. Did the court ever tell the jury for what purpose it could be considered? The district court did not, Your Honor. But I would note that in the government's opening statements as well as its opening and rebuttal closing arguments, we did inform the jury, A, that the evidence was not a substitute for guilt, and, B, that we were arguing the evidence could be used for knowledge and intent in absence of mistake. And those are both purposes that are specifically set forth in the text of Rule 404B. And so we think- Right, but I'm asking about the adequacy of the district court's limiting instruction. And it appears to me kind of curious that the court didn't tell the jury the purpose for which it could be considered. It just said it was admitted for a much more limited purpose, and you may consider it only for that limited purpose. It is up to you to decide what, if any, consideration you give to this testimony. So didn't that kind of leave the jury not really knowing, in terms of the instructions from the court, rather than from the government, as to what it could consider it for? Well, Your Honor, I think the instruction left no doubt as to what the jury could not do with the evidence, and that was to consider it as evidence of character or propensity. And I think this goes to Judge Shedd's point, or one of the questions he raised during Mr. Suarez's argument, and that was that as long as the jury didn't consider it for that forbidden character or propensity purpose, it was free to draw whatever inferences it wished from the evidence based on the arguments it counted. Was there an objection to the limiting instruction? There was not, Your Honor. And do you think there might have been had the judge told the jury how they were to use the evidence rather than how they were not to use the evidence? Isn't the limiting instruction to say you may not use it for this impermissible reason, and then it's in evidence, and if you try to use it or the other side were to try to use it impermissibly, then there would be an objection and it would be resolved at that point, rather than have the judge say, jury, you can't use it for this, but you are to use it for this. I mean, it just seems that's kind of a fine line for a judge to walk, but there was no objection from either side as to that instruction, limiting instruction. That's correct, Your Honor. And the limiting instruction did contain the essential ingredient, and that is the limit that told the jury what they could use the evidence for. What do you think, I'm going to go back to this evidence for 404B, what was the act? I asked the other side to do that. How do you define the prior act? What was the act? How did it define that for me? Sure, Your Honor, and I think it can be done. Don't introduce your answer. Just tell me. What was the act? So the act is the transportation of drugs and currency in a vehicle with a secret compartment. But then secondarily, Your Honor, the act, even if the court doesn't accept that as an act, the act is going to North Carolina, claiming the truck that was towing the trailer, and discussing the circumstances. Now why is that evidence of there being, that would be evidence of the act. That would be evidence of his involvement in the act. That's correct, Your Honor. So that the prior act is attributable to him. And how is that so since all of that occurred after the fact of the act? How is that evidence of his involvement in the act, in your opinion? Well, I believe it goes to the knowledge that he acquired in connection with this prior event. Because what his going to North Carolina and claiming the truck. I don't understand when you say that. The knowledge that he acquired, that seems to me like you're making some kind of claim that he learned from this incident how to transport drugs. That doesn't seem to ring correct to me. I don't understand your argument there, I must say. Well, Your Honor, at a minimum what it showed was that he learned in North Carolina that a vehicle belonging to him had been used to transport large quantities of marijuana and currency. That has nothing to do, though. That might have to go to whether or not there was willful blindness. But how does that go? What does something that happens after the fact have to do with the act itself being attributable to him? It seems to me that argument is not relevant. Well, it is relevant, Your Honor, to the extent that when he was there, he gave this story about how he had sold the trailer, which I think goes to his sort of guilty knowledge regarding his ownership of the trailer. Oh, I thought you were getting ready to say it goes to his credibility since apparently there was some dispute about the state of his ownership or title. Yes, and... No, no, that was a question. I'm a little unclear also. Is it... it wasn't clear to me when I was reading it whether you weren't saying that perhaps he should have been charged after the fact but wasn't. I was also... I'm also a little unclear about what we are to make of his claiming, his going and claiming the vehicle after it was apparently impounded. What are we to infer from that? Well, the trailer was seized by the government. The truck was returned to him and he went and claimed it. So apparently he did own it even though there was some suggestion that he had sold it to his employees. Yes, Your Honor. I think that that corroborates the fact that he had an ownership interest in both vehicles. And with regard to the trailer specifically, the evidence was that he held title. Detective Herndon testified at trial that he was the registered owner of the trailer. And, Your Honor, he was the debt holder on a $10,000 loan for which that trailer served as collateral. Was there any evidence in the record that you are aware of from the North Carolina incident of Mr. Winston's involvement in any way even after the fact? Well, after the fact piece we were just discussing, which is when he went... I mean with involvement in the transportation of the marijuana in the hidden compartment. Well, yes, Your Honor. So he employed the individuals who were towing the trailer. They worked at his farm. And at the scene of that stop, the driver of the truck, Andrew Vanover, told a police officer that Mr. Winston had told him to go to North Carolina to pick up two mules for a man named Don. And that was contrary to what Mr. Winston told the authorities in North Carolina when he went to pick up the truck. He said he hadn't seen Mr. Vanover. Oh, you're relating it back based on the circumstances of the Maryland stop? No, Your Honor. This is all within the four corners of what happened in North Carolina. Okay. And so at the scene of that... May I ask a question? Please. Let's do this. Why don't you make your strongest argument that Mr. Winston was involved in the prior act, from which evidence the jury could reasonably infer that he had been involved in that prior act of transportation. There's ownership. Correct. And you've set out two or three points from which they could find ownership, but that all goes under the rubric of ownership. He owned the trailer? Yes, Your Honor. He owned the trailer. He did. What else do you have? You said there was a discussion that one of the defendants in the criminal case said he'd been instructed, not specifically on drugs, but to take the trailer. What else do you have about Mr. Winston's involvement in the transportation of those drugs in North Carolina? Ownership and what else? Ownership. The second one, Your Honor, is employment of the individuals who were riding in the truck. They were both his employees. They worked at his farm, and I was just telling Judge Duncan, Your Honor, that when the individuals in the truck were pulled over, the driver told law enforcement that he had been told by Mr. Winston to go to North Carolina to pick up two mules from a man named Don. So at a minimum, that was evidence that they were in North Carolina on Mr. Winston's instructions. So your view is the prior act is the transportation of drugs in this trailer in a manner that's hidden, in something that's owned by the defendant, and that the defendant's employees had done the transporting, and one of the defendant's employees, you say, said that Mr. Winston had instructed him to drive that vehicle to North Carolina. That's correct, Your Honor. And then in addition to that evidence, there was evidence before the district court during the motions hearing that the drugs involved in that prior seizure in North Carolina belonged to Juan Carlos Flores, who was the Texas drug trafficker who owned the drugs that were seized here in Maryland, or in Maryland rather, in connection with the government's intrinsic case. And so that's yet another factor that I think tends to support. None of that proves that Mr. Winston did, was involved. So what do you say about that? Well, I don't think for purposes of relevance under Rule 404B, Your Honor, I don't think we're required to prove that he was involved by a reasonable doubt. I think Huddleston simply requires that there be evidence from which a jury could conclude the act occurred and that the defendant was the actor. We're not applying a reasonable doubt standard here, and certainly there was sufficient evidence in the form of all the things we just discussed, ownership, employment, what the driver told law enforcement, that would allow the jury to make the inference that Mr. Winston was, in fact, an actor in connection with that prior incident. I will note that even if this Court concludes that there was no prior act by Mr. Winston, all that means, Your Honors, is that the evidence is no longer a prior act that's subject to Rule 404B. There still has to be an ordinary relevance determination under Rules 401, 402, and 403. And the authority for that, Your Honors, is that the Gonzalez-Lira case out of the Fifth Circuit that the appellant cited in their reply brief, they cited for the proposition that the Court excluded evidence under Rule 404B in that case, and the evidence related to a prior smuggling attempt involving a defendant's tractor trailer where the defendant wasn't present. It's not accurate to say that the evidence was excluded. To be sure, Your Honors, two judges found that the evidence was not a prior act by the defendant and therefore not admissible under Rule 404B, but they nonetheless held that the evidence was relevant and admissible under Rules 401, 402, and 403. And they held that because the evidence showed that the defendant knew that drugs and money were shipped across the border in tractor trailers, and he knew, in fact, that one of his trailers had been used to do just that. And so the point of Gonzalez-Lira, Your Honor, is to say that even if this Court finds there's no prior act, it still has to do a relevance determination under Rules 401, 402, and 403. And we submit that the evidence is admissible on that basis as well. Do you then start running into a 403 problem, though, under that approach? Isn't the 403 problem more pronounced under not prior bad act, which you just have to see now, or whether or not the prejudice substantially outweighs the relevance, don't you? Well, Your Honor, I would say there is no 403 problem because the probative value of this evidence was so strong. It was the repeated employment of the same modus operandi in the defendant's truck or trailer in the first case and truck in the second case. And so under those facts and in light of the district court's careful limiting instruction and considering the manner in which the evidence was used at trial, I don't see a 403 problem. Is the argument you're making now about just normal relevance, is that more apropos in a conspiracy case than in just an incident case? I'm asking you. That's a good question, Your Honor. I think it might be more apropos in a conspiracy case, but certainly here on these facts, it is our position that the evidence of the prior incident is admissible under Rule 404B. And, in fact, in that Fifth Circuit case, Gonzalez-Lira, that I mentioned, there's a concurring opinion which simply says that the majority took a detour and should have found that the evidence was admissible under 404B. And we would submit that there are additional links between Mr. Winston and the prior act in our case that weren't present in Gonzalez-Lira, such as his employment of the drivers, the fact that the drivers were there on his instruction and that the same person owned the truck. What standard aren't we reviewing this for abuse of discretion? That's correct, Your Honor. And it's our position that the district court was well within its broad discretion when it admitted this evidence under Rule 404B. Help me understand why this evidence. There was a fair amount of it. You have the drug sniff. You have the collective DEA information. Is your response to why this was necessary the fact that you don't know at the outset what's going to be necessary or not? Do you proffer everything that seems reasonably arguable in support of conviction? It seems as though there was a lot there based on without the need for the information about the North Carolina stop. Well, in hindsight, Your Honor, that's certainly true. I don't think we knew in advance of trial that the evidence was going to come in that way. So much of this depended on the testimony of the cooperator who wound up testifying that the defendant was present when the compartment was installed in his shed, and the defendant himself testified to that effect on the stand, and we couldn't have predicted that in advance of trial. What we knew in advance of trial was that this defendant was going to employ a blind mule defense and that his knowledge and his intent were going to be the central contested issues in the case. And so we thought, given that, that it was critical that the jury hear that he had previously owned a trailer that was used to ship a half ton of marijuana and over a million dollars in North Carolina. We thought that was critical to knowledge and intent, and that's why we thought it was necessary. Does it outfall under the government's theory of better to put in too much and win and fight it out later than to not put in enough and lose? In my experience, trial cases, the government just puts in everything they have because they just don't know what's going to be enough. I think that's fair to say, Your Honor, but we were careful about this. We did sincerely believe it was necessary at the time, and as I said, we didn't have a good indication as to how the cooperator would testify. We didn't know that Mr. Winston would testify. I'll run you into your red light, Judge Keenan. Anything from you? Anything further? No, thank you. No, thanks. Thank you very much. Okay. Mr. Suarez, I'd like to hear from you. Mr. Suarez? Yes. Could you tell us why you don't have a harmless error problem in this case? It seems to me that Mr. Winston made so many cringeworthy comments, you know, in terms of, you know, just thinking as a prior attorney defending people, the number of comments that he made, false explanations, the shale energy training programs, the work that he did, pardon me, that he never did but he nevertheless got paid for. There are just so many things that he alluded to or blatantly stated that were plainly false. So how did this one piece of evidence so pervade the body of evidence to make this prejudicial requiring reversal? Well, the question, you know, Your Honor, as you know, is whether it is probable that the error could have affected the verdict here. Here, Payne was acquitted and Winston was convicted. The government repeatedly emphasized this. And it points about shale energy. Payne also testified about shale energy. And the government repeated eight times during its closing that both Winston and Payne gave that explanation to the jury. So that was not a distinction that, in our view, was sufficient to tip the scales, whereas the North Carolina evidence was highly prejudicial and did tip the scales. And so the government repeated at 388 that the culpability of these two defendants was equal. They made numerous statements that suggested that the culpability was the same. And so given the acquittal versus the conviction here, it's clear that the error was not harmless. Now, Mr. Suarez, though, hadn't he talked to the police on the day of his arrest and said that he was in New Holland, Pennsylvania when he clearly wasn't? His cell phone location data indicated otherwise. He said he was paid for work he didn't do. He made a lot of statements that Mr. Payne never made. That's actually not completely true. Mr. Raul also made statements on the side of the road right after he was arrested regarding the New Holland, Pennsylvania. And he also was wearing a shale shirt, and he was also trembling at the time. So there is evidence that suggests that Mr. Payne was equally nervous and possibly made incriminating statements as well. So we just don't think that that is sufficient to tip the scales. Did Mr. Winston say he didn't even believe his own story? Mr. Winston, that is very thin evidence. I didn't ask you that. I said, did he say it? There is testimony from. . . No, no, let's just get it straight. Could the jury believe when it deliberated that he said that, yes or no? The jury heard. . . Could there be a yes or no answer to that? Yes, they could have possibly believed that. But it was testimony that was from one of the three officers interviewed. . . It doesn't make any difference. . . It wasn't corroborated. It doesn't make. . . Does it have to be corroborated? Well, we just. . . No, no, no, no, no. Wait a second now. You were talking to Judge Keenan about how your person was situated the same as the other defendant who was acquitted. Let's just walk through this. Your defendant made the statement when it was pointed out to him there was no such hotel in New Holland that. . . And he said, I don't even believe my own story. Your defendant. . . Your client said that, correct? In our view, he did. Wait a second. Is it testimony that your client said that? There is testimony that he said that. And the jury could believe that, of course. Could they? Could the jury believe the evidence that's placed in front of them? In our view, though. No, no, no. You have to answer my question first. That evidence was entered into the record in front of the jury, correct? It was. The jury could believe it then, couldn't they? It could, but it was not going to tip the scales in the way that the North Carolina evidence. . . Well, that's what you say. That's what you say. But that's the difference between. . . You were trying to point out that the two defendants were situated identically. And I was just pointing out to you that there was at least one distinction when your client admitted in a way the jury could believe that he even knew he wasn't telling the truth. Isn't that correct? Correct. Now, a couple points I want to make that are really important here. First, regarding the Rall case. The government suggested that that was the most instructive case before. And we agree. The similarities there were actually much greater than those here. In Rall, Rall had a prior act where he drove tractor trailers that were laden with marijuana with paper products stuffed in the back with false bills of lading. He transferred driving duties to his family, so there was a clear connection. And then in the actual charge conduct, the family members, again, drove tractor trailers, same vehicle, loaded with marijuana, same drug, and with paper products in the back, same exact M.O. It's a stark contrast to this case. And even despite those drastically greater similarities that were present there than here, this Court did not admit the evidence as to possession and conspiracy. Have you finished your argument about why this is not harmless error if it is error? Have you addressed all that you wanted to on that point? We have addressed it. Because Judge Kenan had asked you, and you answered, and I interrupted you to maybe correct some facts, as honest to the record. But I wasn't sure you'd finished answering her question. I did finish answering that question, Your Honor. And just the final point, as my time expires, if I may complete the point, is that ultimately the doctrine of chances was the basis for the government's argument here. It reiterated an opening, cross, and closing. And this case was about defendants who faced virtually identical evidence. The government exploited the cognitive biases of the jury, which could not be cured by limiting instruction. And Winston suffered a 10-year mandatory minimum sentence as a result. This case is ultimately about Mr. Winston's fair trial rights, and this Court should reverse. We thank you very much. We'll step down and agree counsel and go directly to the next argument.
judges: Dennis W. Shedd, Allyson K. Duncan, Barbara Milano Keenan